Good morning, Your Honors. My name is Elianis Perez, and I am Senior Litigation Counsel for the U.S. Department of Justice Office of Immigration and Litigation District Court Section. Your Honors, this case is about the very simple principle that Congress enacted 8 U.S.C. 1226C to prevent the most dangerous criminal aliens, which include murderers, rapists, child molesters, and terrorists from harming members of the public or fleeing their removal proceedings. Even though the plain language of the statute and its legislative history make Congress's intent abundantly clear that these criminal aliens should be detained during their removal proceedings, we are here today because the District Court held that Congress intended the statute to include a bond hearing for criminal aliens who are detained during their removal proceedings for longer than six months. However, Your Honor, if you look closely at when Congress enacted Section 1226C, you would know that Congress knew very well that immigration proceedings could last longer than six months or even longer than a year. In fact, the Senate bill noted that the deportation process is complex and lengthy and that criminal aliens remained in the United States here illegally and while they appeal their immigration cases in removal proceedings. Is it the United States' position that except in those cases where it becomes clear that a person cannot be deported because no one will take him or her, that there is no limitation, there's no reasonable limitation, that as long as the case is ongoing, no matter how long it takes, a person who falls within the category can be kept? Your Honor, it is the government's position that Congress intended these aliens to be detained during removal proceedings. The statute is written in this detention authority that Congress clearly represented in an act in 1226C is indeed constitutional. So the answer to my question is yes. Yes, Your Honor. But to avoid constitutional problems, don't you have to read a reasonableness requirement into the statute? No, Your Honor, you So long as 1226C applies, the alien qualifies under 1226C, he can be held ad infinitum? No, Your Honor. Without a bond hearing? No, Your Honor, absolutely not. Again, the court in Des Moines, the Supreme Court, distinguished 1226C detention from 1231. I understand that, but I'd just like an answer to my question. So you can, can you or can't you hold such an alien indefinitely? Your Honor, no, that is not the government's position because again... So what is your position? You can't hold them indefinitely. How long can you hold them? Your Honor, the government's position is that 1226 detention is not indefinite detention. How long can you hold them? What's the limit on it being indefinite other than the completion of the removal proceedings? The statute mandates that 1226C detention mandates the government to Okay, so if the removal proceedings are pending forever, the alien can be held forever? Your Honor, unfortunately, we don't have a situation where removal proceedings are pending forever. You know, all I'm trying to do is get an answer to a simple question. I mean, if that's the government's position, say so. Here's an alien, he's held under this statute, removal proceedings are instituted, and the removal proceedings go on for 10 years. That's perfectly all right under the statute. No, Your Honor, that's not what the government is saying. What the government is saying is that the court should respect the mandate as enacted in 1226C. So go back to my hypothetical. I really wish you'd try to answer the question, all right? Go back to my hypothetical. Alien is detained, removal proceedings are instituted, 10 years passed. He's in involuntary detention. He has not had a bail hearing. Government's position is that's perfectly all right. He's still not entitled to a bail hearing. No, Your Honor, in those cases, taking your hypothetical as true, in those types of cases, it is the government's position that that alien should bring an as-applied challenge to his or her detention. It is the government's position that detention doesn't automatically become prolonged or unconstitutional at six years. So in that determination, the court, in deciding whether or not an alien's detention is indeed prolonged or unconstitutional, there are a number of factors other than the length of detention that the court should consider. So how does the alien go about making that challenge which you've now conceded he has a right to make when he believes his detention has been prolonged, overly prolonged? He does it by habeas corpus? Yes, Your Honor. So it's on a case-by-case basis? Yes, Your Honor. So is the government's view of the statute consistent, say, with the Third Circuit's opinion? That is a more, it's a preferred view rather than a six-month bright-line rule. Because again... That doesn't answer my question. I didn't ask you which was preferred. Is the government's view of how the statute operates consistent with the Third Circuit is too soft on these aliens? Well, Your Honor, we don't concede that the factors that the Third Circuit looked at are exclusive factors that the court should consider. We should also, the courts are entitled to consider several other factors, which include some of the factors that the Third Circuit did indeed consider. And these factors clearly, they look at the length of detention, why the alien has been detained, if removal proceedings are terminating, and therefore, we're not necessarily saying that the Third Circuit's decision is something that this court should follow. But it is a more preferable approach than a six-month bright-line rule that the District Court in this case adopted. Again, Your Honor... Those things that the Third Circuit says should be looked at in a habeas proceeding, for example, those could be, similar factors could be considered in a bond hearing, I take it? Yes, Your Honor. So if the result of adopting the position that you're espousing now, the suggestion is that anyone who's, any alien who is in for six months, who's been detained for six months, and thinks that's probably too long, should file a habeas petition? I mean, they're more than free and able to file a habeas petition. Why not just have the bond hearings as a matter of course, as a practical matter, why not just do that? Because the statute doesn't have a temporal limit, and that in having, assuming that six, that detention automatically becomes unreasonable as six months just looks at the length of detention, and that's not what the Supreme Court in Des Moines stated. In fact... But I'm asking a more practical question. If the suggestion is, and perhaps it's my suggestion, not yours, that all of these people could just file a habeas petition, why not just, why not just do it once in a bond hearing? Because, Your Honor, that is not, by sort of adopting that rule, you're automatically, you're assuming that the statute would allow that outcome. And what the government's position is, is that the statute doesn't allow for that outcome. The statute clearly says that these individuals should be detained during their removal proceedings. And looking at the statute, and looking at the Supreme Court's decision in Des Moines, you would also see that just looking at the length of time, people are not automatically, as a matter of right, given a bond hearing simply because they have been in detention for six months. Even, for example, I understand that the district court relied heavily on Saviras to reach its conclusion. But even in Saviras, where these aliens are not, they have been in detention for six months, they don't, Saviras doesn't create an automatic right to a bond hearing at six months. Instead, what it does is the alien has to provide good reason to believe that there's no significant likelihood of removal to, in the reasonable foreseeable future, that he's not going to be removed. And then the government has an opportunity to provide evidence sufficient to rebut that showing. So the district court's decision gives these 1226 aliens more than Saviras even created. And again, when you look at the Supreme Court's decisions in Des Moines, the alien there was in court actually, the court addressed specifically the length of Mr. Kim's detention and attributed the length of his detention to the legal choices that he made. And again, the Supreme Court stated that the legal system is replete with situations requiring making these very tough decisions. Mr. Kim was in detention for six months because he wanted to fight his deportation proceedings. The court said that he had every right to do so. But unfortunately for him, that prolonged his detention in 1226 seat detention. Let me ask you a related question. If we were to adopt your view and the rule became on individual habeas corpus petitions, what do you envision would be the district court's authority if it found that the detention was unduly prolonged? Could the district court order the alien released? Could the district court conduct its own bond hearing and then release the alien on bond? Or would the district court have to order the immigration authorities to conduct a bond hearing? The district court would have to order the immigration authorities to conduct the bond hearings. And as the district court indicated, these bond hearings, the alien would have to show to the satisfaction of the immigration judge that he's not a flight risk or a threat to society. So in every single case that you have, you could end up with a different rule. In other words, somebody would come in, say, at the end of six months and seek a bond hearing, or somebody could come in at the end of eight months and seek a bond hearing, or a year. You'd have no consistent rule under your theory. It would be ad hoc, individually applied from case to case. Your Honor, as the Supreme Court noted in Matthews, the principles of due process are very flexible. And in making this determination, and as applied determination as to the alien's detention, the court would have to look at the specific factors of that particular alien's detention. And unfortunately, the factors are going to be different, and the facts of the cases are going to be different from one case to another. So if you look at factors, if the alien had difficulty getting some evidence that he or she sought continuances, that would work against the alien. If, on the other hand, the government lawyer handling it said, I'm going on vacation for a month and I want this case postponed, that, I suppose, would be in the alien's favor. So what you're suggesting is that there is no temporal time when it becomes too much. It's going to be simply a case-by-case basis. Why is it better to have some kind of a general rule which says to a district judge, this is too long? Your Honor, because the general rule, again, would have to be grounded on the statute. And the statute, and there's no argument that even respondents can point to that somehow Congress intended for these individuals to have a bond hearing. And the Supreme Court clearly highlighted this and highlighted Congress's intent in enacting 1226C. So to the extent that the court feels that at some point an alien is entitled to a bond hearing and that a court needs to look at the length of that alien's detention to assure that the purpose of the statute is still being served, then at that point the court would have to look at different factors to decide whether the purpose of the statute is being served in that particular case. So I could see a situation where an alien brings a habe and the court decides, well, there are factors both ways. It's not at a time when I'm going to order a hearing. And two months later the alien is back and saying, well, these factors have occurred. They're really dragging their feet deliberately. And so we have another hearing. Isn't that likely to be what happens under your theory? It may happen, Your Honor. Yes, it may happen. But again, in looking at the statute and looking at the factors of each particular case, there are going to be different determinations. And a bright line rule is not supported by anything in the statute or even by a Supreme Court's decision. So even if the courts would feel that a six-month bright line rule is more convenient, it's not supported by anything in the statute or the legislative history. And there's no question. Leaving the six-month bright line rule to the side for a second, why is it that it's preferable to have these decisions made in the first instance by a district court rather than an immigration court with expertise? I would think you would prefer the latter. Well, Your Honor, again, what the government is looking at is the statute itself. Looking at the language of the statute and what was before Congress when it enacted the statute. And the government's position is that we should not, the courts should not rewrite the statute. And that's exactly what the Moore held. And if, again, if at some point there is a question to the, as to the constitutionality of an alien's detention under the statute or if the courts are concerned or if the alien is concerned that the purpose of the statute is not being served, it is up to the alien to bring that challenge to the courts to decide whether that is in fact the case. And if that is the case, then the courts should instruct the government to provide this individual a bond hearing so the individual can prove to the satisfaction of the immigration judge that he is not a flight risk or a danger to the community. I take it what you're saying in answer to my question is regardless of whether the government might prefer one or the other, the statute only allows one course. Yes, Your Honor. You keep talking about the alien having an opportunity to prove that he's not a flight risk, etc. Of course, the cross appeal raises an issue here as to whether it is constitutional to put that burden on the alien. And the suggestion is made that the constitution requires that to maintain prolonged involuntary detention, the government must bear the burden of showing by clear and Why isn't that standard constitutionally mandated? It's the standard that the Supreme Court has required in a host of civil commitment cases, which are an apt analogy in certain respects for these involuntary mandatory detention cases. Your Honor, it is counterintuitive, Your Honor, to provide 1226C detainees, which are the aliens that Congress was particularly concerned with when it enacted the statute, with more protections with the 1226A detainees. But the Congress didn't say anything about the burden of proof in 1226A, that's by regs. That's right. Yeah, so it's not that Congress set the burden of proof. Your Honor, in this case, the procedures on the 1226A are the procedures that the immigration authorities have adopted in order to comply with the statutory requirements to provide these individuals with a bond here. That's fine. But even that, doesn't the answer, if Congress had adopted them, that might be one thing, right? But the question is, is not what the regulations say or what the regulators might want, but whether or not the Constitution requires, in order to justify prolonged involuntary detention, that there not only be a hearing, but that that hearing be conducted under a scheme where the government has the burden of showing, by clear and convincing evidence, why the prolonged detention should be made even more prolonged? That's been raised as a constitutional question, and you've got to respond to it in constitutional terms. Yes, Your Honor. Okay, so in this case, the district court decided that the relief for the class was to provide them with bond hearings consistent with 1226A. The immigration authorities, in looking at whether the board's decisions, in this case, for example, matter of GERA and matter of ADENGI, which in the regulations that the immigration authorities have implemented, the issue here, because the statute is silent, is whether the agency's interpretation of the statute is permissible or is that arbitrary and capricious and contrary to law. There's nothing here to state that somehow the agency's interpretation in the adoption of these regulations, it's unreasonable or arbitrary and capricious. No, wait a minute. That begs the question, with all due respect, all right? The regs are, per se, unreasonable if they are unconstitutional. So you've got a constitutional question here, which you really don't squarely address in your briefing, right? And the argument is based on the civil commitment cases, where the court has said that certain safeguards constitute the Supreme Court. It says that certain safeguards are constitutionally required. Why shouldn't those same safeguards be constitutionally required in respect to this type of involuntary detention? Again, Your Honor, whether we're applying the Chevron deference, that is a very deferential standard. Or whether we are looking at the actual constitutionality of the current standards under 1226A under Matthews and looking at the balancing test in Matthews, Your Honor, that is also a very deferential standard. And looking at the different standards as articulated in Matthews and identifying whether those standards are constitutionally adequate, the court would have to really just take a look at the administrative process and whether that process is fair. And here in bond hearings, the IJs, they take a look at a number of factors. They take a look at whether the alien has a fixed address in the United States, family ties, the length of residence in the United States, employment history, a number of factors that somehow do not add up to an alien not being able to have his day in court. And that is why the court should conclude that this process is constitutionally adequate. Your Honor, I see that my time is up. If Your Honors do not have any other questions, then I rise on my briefs. Thank you. Thank you. Good morning, Your Honors. May it please the court, Anant Saraswat on behalf of Mr. Reed and the plaintiff class. With the court's permission, I'd like to use 12 minutes of our time to discuss the government's main appeal and allocate the remainder of our time to Ms. Reddy to discuss Mr. Reed's individual case and the cross appeal. Good luck. You're going to allocate your time in response to the questions, and I don't think we can guarantee anything different. Understood, Your Honor. Thank you. Your Honors, the district court's construction of section 1226C in this case is a fair reading of the statute that correctly avoids the serious constitutional concerns that would result if the government were able to detain class members for prolonged periods without ever giving them any individualized process to determine if they're being What if we disagree? What if we simply think the statute is unconstitutional as applied to class? Is the remedy that the district court imposed still viable? Well, Your Honor, if the court reaches the conclusion that the adoption of constitutional avoidance doesn't apply in this case, we think that the court can and should still affirm the district court's order on the grounds that the statute is unconstitutional as applied to people who are held under 1226C who have been detained for more than six months. What's magic about the six months? Well, Your Honor, we believe that the six-month threshold is appropriate for a number of reasons. First, Your Honor, we think that the six-month threshold is the most consistent with the relevant Supreme Court due process jurisprudence. So the most obvious example, Your Honor, is Zadvitas. In Zadvitas, the Supreme Court, when considering a similar situation regarding prolonged detention of people who are in the post-final order removal context, the court held that it should find a presumptively reasonable period and it identified that period as six months. And it identified the six months as a relevant period for a number of reasons. First was that it looked at the statutory scheme as a whole, and it recognized that in other places in the immigration statutes, Congress had recognized that six months was a threshold that might create due process concerns. In Zadvitas, the court mentioned, I believe it's 8 U.S.C. 1537, which was a statute governing removal of alien terrorists, and that statute required review after six months. Applying that same logic today, Your Honor, we now have even further evidence since Zadvitas that Congress has also recognized six months as a threshold that creates constitutional concerns. As we explained in our briefs, and as the court discussed in Clark, in the wake of Zadvitas and in the wake of 9-11, when Congress passed Section 1226A, Congress authorized detention of people who were considered national security threats, and it required that that detention be reviewed every six months by the Attorney General. Now Zadvitas is one source, we think, of that six-month threshold, but as the Second Circuit found very recently in Lora, we think that DeMoor itself also suggests that six months is the appropriate threshold. Let me ask you a quick question. Is there any evidence as to how long the average case takes between the time it's filed and there's a decision of removal or non-removal? Well, Your Honor, the evidence in the record in this case shows that in some cases the average, I believe, is, I believe the statistic was 457 days from the Ninth Circuit, and that detention could last much longer. In the Ninth Circuit, in the record from Rodriguez, which was incorporated into the record in this case, they identified a case of someone who was detained for roughly four years. Mr. Reid's own case is also, we think, a perfect illustration of the potential problems that could result from the government's position. Mr. Reid, his immigration case has now been pending for, I think, over three years, and if we were to accept the government's unfettered discretion to detain someone during the pre-removal proceeding without ever giving them an individualized bond hearing, Mr. Reid would still be in prison. Yeah, but that's not the government's position. Government's counsel acknowledged that habeas relief is available, and you've got an alternative holding here by Judge Ponzer that grants exactly that relief to Mr. Reid, so our holding that the six-month bright line is not the correct measure wouldn't affect Mr. Reid at all. Your Honor, that's correct. That holding wouldn't affect Mr. Reid. I simply mentioned Mr. Reid's case as an illustration of the constitutional problems that prolonged detention would create, and because of those problems, Your Honor, we think it's appropriate for the District Court to have done what it did here, which is what every single other circuit court to have considered the question has done, which is to avoid those constitutional problems by construing the statute to require... You say every other circuit court. How do you explain the Third and Sixth Circuit decisions? Well, Your Honor, we acknowledge that there is a disagreement among the circuits with respect to how this constitutional problem should be addressed. Right. And we think that the approach adopted by the District Court here and adopted by the Ninth and recently the Second Circuit is the correct approach for a number of reasons. Yeah, I know, but you made a categorical statement that every circuit court has come out on this your way. Well, Your Honor... It just puzzled me. Your Honor, I apologize if that's the impression I gave. That's not what I meant to say. What I meant to say, Your Honor, is that on the question of whether the statute has to be read to impose some reasonableness limitation on the government's authority, every circuit has come out our way. Now, obviously, Your Honor, as I said, there is a the statute should be read in light of that constitutional concern. And we think that the Second and Ninth Circuit's approach is correct. As I said earlier, Your Honor, we think that that approach is most consistent with Zadvitas. It's also consistent with other Supreme Court jurisprudence in the due process context that is recognized partly for the kind of credential reasons that Chief Judge Howard and Judge Stahl alluded to, that in situations like this, it is necessary in order to make things easier for the district courts to set fixed temporal thresholds. So we identified in our briefs the example of County of Riverside. That's a case in which the Supreme Court said that there has to be a 48-hour threshold after which a probable cause hearing has to be held. And there are other cases we identify in our briefs. So for those... sufficient to say that in individualized cases that the district court can take a look at the facts which lead to the detention for an extended period of time and make a determination based on that in the individual case that in this particular case a bond hearing is required. Why is there a different factual scenario? Well, Your Honor, we think that that six-month rule is most consistent with both the Supreme Court's jurisprudence and with the principle of constitutional avoidance. As the Supreme Court made clear in Clark, the purpose of the constitutional avoidance doctrine is to avoid having to decide constitutional questions. We think that one of the problems with the Third Circuit approach, with this case-by-case habeas corpus approach, is that rather than having a single interpretation by a higher court that says what the threshold should be, we are requiring litigants to go to a district court in every single individual case and have the district court render a ruling in every single individual case on whether the statute is unconstitutional as applied to that person or not. And we think that a better approach under the doctrine of constitutional... Isn't that the way... isn't that the way many constitutional questions are adjudicated? We don't presume to say that a police officer who strikes a suspect more than two times is guilty of excessive force, and we let these cases be adjudicated case-by-case to see whether or not there is a constitutional violation. And the circumstances of an individual detention can vary widely. The individuals are different. The reasons for the delays are different. There are just so many circumstances that enter into it. I struggle with the notion that we have authority to step in where Congress didn't feel fit to do so, where Congress made a flat bar and impose a temporal limit to pull it, to pluck it really out of thin air. That's really what we would be doing. Well, Your Honor, if I may, I'd like to respond in a number of ways. I mean, first, we don't think it's necessarily clear from the language of the statute itself or from the legislative history, as we discussed in our briefs, that Congress actually did intend to impose a flat bar on bond hearings in the case of prolonged detention, which is what we're talking about here. The statute says that the Attorney General, now the Secretary of Homeland Security, shall take people into custody when they're released. It does not say for how long the government shall hold them. And we think, in this case, very similar to what the Supreme Court did in Zadvydas, it is appropriate to look at what Congress did not say. And in this case, just as Congress did, just as the Supreme Court did in Zadvydas, we think that it's appropriate to look at the fact that Congress did not impose a temporal limitation and look at that fact in light of the serious concerns, constitutional concerns, that would arise from unlimited detention authority and find that there is a reasonable limitation. Now, with respect to Your Honor's point about individuals having individual cases, we absolutely agree, Your Honor, that every individual's case is different. And we think that it's appropriate for the immigration judge to evaluate those differences when deciding whether or not someone should be released. But I think it's important to reiterate, Your Honor, that all we are asking for in this case is a hearing. And we do think that both under the Supreme Court's jurisprudence and under the Six-Month Threshold. And again, Your Honor, I go back to the Supreme Court's opinion in Clark, where one of the things that Justice Scalia said in that opinion is that part of the purpose of the doctrine of constitutional avoidance is to give effect to Congress's intent. We know that in the immigration scheme as a whole, Congress has set up a system whereby immigration judges, who, as Chief Judge Howard mentioned earlier, are by training and experience capable of conducting these bond hearings. We know that Congress set up a system where immigration judges are able to do this. And so we think that consistent... We also know, of course, that Congress knows perfectly well how to require or permit bail hearings and how to set temporal limits. And unlike several other parts of the Immigration Act, they chose to do neither in 1226C. Your Honor, that's absolutely correct. Congress does know how to set a temporal limit when it wants to. So the question becomes, under the doctrine of constitutional avoidance, what does the Court do with the fact that Congress did not speak at all to temporal limitations in this case? And we think that just as in Zadvidus and also in other cases, such as, for example, National Labor Relations Board versus... I believe it's a Catholic Church, Your Honor, but the name escapes me. I can submit a letter on this. There are examples of cases... May I finish, Your Honor? Yes. Your Honor, there are numerous examples. Zadvidus is just one, where in light of the serious constitutional concerns that would arise, if the Court decided that Congress actually did not mean to put in a limitation on the government's power, there are examples where the Congress... Where courts have said, because of those concerns that would arise, we are going to avoid those constitutional concerns by interpreting a statute that's silent as to a constitutional issue to contain some sort of limitation that and we think that that's what the District Court correctly did here, and the Second Insight and Ninth Circuit have done, and we think that that is correct. Thank you, Your Honors. Good morning, Your Honors. Law student, intern Swetmarni, on behalf of the plaintiff. Unless this Court has additional questions with regards to Mr. Reed's individual case, we are prepared to rest on the briefing on that issue, although I will note that Mr. Reed is in court today, and we will focus the remainder of our time on procedural protections required at prolonged detention bond hearings. This Court should reverse the lower court's ruling on procedural protections and hold that, after detaining an individual for more than six months with no individualized determination, the government is required to show by clear and cannot be adequately addressed by less restrictive conditions. Counsel, let me ask you a threshold question. Suppose, hypothetically, and contrary to your instincts, that we were to decide that the six-month rule that Judge Ponza promulgated was incorrect, and that bond hearings should be available under a behavior scheme, something along the lines of what the Third Circuit has said, right? If we were to make that decision, what happens to the issues posed on the class appeal? Because that decision would undermine the entire rationale for the certification of the class, the classes composed of people who are being held more than six months in violation of six-month rule. And is there any basis for us to even reach the issue that you're eager to tell us about if we make that determination? Yes, Your Honor. In the Third Circuit, which did not adopt a bright-line rule, but did adopt, but it, although it did not adopt a bright-line rule, it did reach the question of burden and found that the burden should be on the government, even in a case-by-case, individualized basis. Yeah, but the Third Circuit had, didn't the Third Circuit have a case, as I recall it, where the individual who had brought the case was still in detention? Yes, Your Honor. See, in our case, that's not so. So we can't premise continued jurisdiction on the need to resolve Mr. Reed's case, because he's already out on bond, and he's there not only on a holding based on the six-month rule, but based on Judge Pons's alternative finding that he would have been entitled to habeas even in the absence of the six-month rule. Your Honor, under Sosna, the Supreme Court reasoned that if the class certification issue related back to the named plaintiff's complaint, even if the named plaintiff's case was mooted out, the class issue could continue as long as the issue would otherwise evade resolution by the court. But this is different than Sosna, because this isn't only a question of the named plaintiff's class moving out. This is a question where the whole rationale for the definition of the class would dissipate. There would be no, there could be no class other than an artificial and theoretical class, the kind of a class predicated on a six-month rule once you invalidate the six-month rule. Your Honor, the class was predicated on both a six-month rule, but also predicated on the idea that individuals subject to prolonged detention. I looked at the definition of the class and the motion for class certification, and I don't think that's going to fly. But go ahead. You can proceed with the rest of your argument. Sure. Your Honor, setting that question aside, the question of what burden and standard is due to class members who have been subject to prolonged detention has been answered by every other circuit to have addressed this question has placed the burden on the government, the Third, Second, and Ninth Circuit all since DeMar. In addition, both circuits who have considered the issue of standard, the Second and Ninth, have placed a clear and convincing evidence standard on the government as well. The Supreme Court has repeatedly held that the risk of erroneous deprivation of a fundamental right, such as individual liberty, may not be borne by the individual. And we believe that this burden and standard issue should be resolved similarly in this case, independent of whether a six-month bright line rule is established. In reaching these holdings, courts have recognized a profound and increasing liberty interest at stake as class members are subject to increasingly long lengths of detention. As my co-counsel mentioned, in the Rodriguez case, a study of over 460 individuals showed that the average length of detention of individuals has changed categorically from the time of DeMar to now, where an average of 427 days is the norm, even before individuals had any chance to request a Rodriguez hearing and have some incentive for delay in those cases. The disconnect for me is if it is constitutional for Congress to set up a regime whereby criminal aliens who are released from incarceration get no bond hearing whatsoever, but are detained, if that doesn't violate due process, then why is it that suddenly at six months the burden now is on the government? I understand what the other circuits have said, but I'm having some trouble understanding what's wrong with what the district court said here. Your Honor, the district court premised its decision of not shifting the burden to the idea that detainees under 1226C should not be entitled more procedural protections than those under 1226A. However, this is a categorically different issue. This is an issue for those individuals who have had no individualized determination up to at least six months of detention. And that's perfectly constitutional. Constitutional up to six months. Uh, Your Honor, we, we believe that that's Demore, right? Uh, yes. Demore did state that for the brief period of time necessary for removal, uh, which they verbalized as between 1.5 on average, 1.5 to five months of detention, uh, that 1226C was constitutional. Uh, however, the court also noted that should detention, uh, persist beyond those levels that there may be a serious issue. And in Zidvitas, uh, the court noted that preventative detention, uh, in the civil detention context has been allowed only in the case of, uh, specially dangerous individuals and cited two cases, uh, multiple cases in the civil detention context, uh, which required a clear and convincing evidence standard to be placed on the government, uh, including Salerno and Fuchsia. And we believe, uh, putting the Zidvitas and Demore rulings together that the has reasoned that, uh, a heightened burden is required in the prolonged detention context, as opposed to, uh, the context of hearings occurring early on. In Demore, the court, uh, specifically rejected, uh, the requirement of an individualized hearing on day one and, um, did not reach the question of what standard and burden would be required later on. But, but this case is, is different than the civil commitment cases in at least one respect that to me is, is salient. In the, in the typical case, you, you commit civilly a sexually dangerous person. Uh, for example, that commitment is, is by nature indefinite. It may very well last the person's lifetime or at least, uh, much of his adult life. Uh, here, uh, the detention, although onerous, is finite. It is, it is capped by the termination of the removal proceedings. And doesn't, doesn't that make a difference in any sort of, uh, of due process analysis? Respectfully, no, Your Honor. Although the Supreme Court, uh, in Addington did refer to detention of a particular, of a potentially infinite scope, the Supreme Court didn't, uh, didn't state that that was the only context in which a heightened standard was required. In Salerno, the court noticed the importance of a clear and convincing evidence burden on the government, even in a context in which detention was limited finitely by the Speedy Trial Act. Further, in reaching the clear and convincing evidence standard in Addington, the Supreme Court referred to two detention, um, two immigration cases, one being Woodney, would be concerning the standard required in deportation proceedings. Again, a finite length procedure, uh, for support for the, the, um, proposition that in prolonged civil detention, uh, where a heightened liberty interest is at stake, a heightened procedural protection is required. Thank you both. We will take this back and consider it further. Thank you.